CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED for Roanoke
MAR 14 2007
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 19 2007
JOHN F. CORCORAN CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSEPH H. MOORE,<br>Petitioner, | )<br>) Civil Action No. 7:06CV00410<br>) |
| v. | ) MEMORANDUM OPINION<br>) |
| UNITED STATES OF AMERICA,<br>Respondent. | ) By: Norman K. Moon<br>) United States District Judge |

Petitioner, Joseph H. Moore, proceeding pro se, brings this action as a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Moore challenges the validity of his sentence of 168 months incarceration followed by a term of five years supervised release, for conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 846. Moore maintains that he was sentenced in violation of Fed. R. Crim. P. 32(e)(2) and U.S. Sentencing Guidelines Manual § 6A1.2 (2004) (hereinafter, "Guidelines") and that counsel provided ineffective assistance. He requests that his sentence be vacated and his case be remanded for re-sentencing or, in the alternative, for an evidentiary hearing. Respondent filed a motion to dismiss to which Moore filed a timely response, making the matter ripe for the court's consideration. The court finds that Moore waived his claims in his plea agreement. Accordingly, the court grants respondent's motion to dismiss.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On September 5, 2003, a federal grand jury in the Western District of Virginia returned a two (2) count indictment against Moore for conspiracy to distribute and possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 846, and a related forfeiture count pursuant to 21 U.S.C. § 853. Pursuant to a written plea agreement, Moore pled guilty to the first count on March 1, 2005. In accordance with

the plea agreement, the United States agreed to stipulate that Moore would be held responsible, for the purposes of Guidelines §§ 2D1.1 and 1B1.3, for an amount of methamphetamine "no less than 500 grams but less than 5 kilograms." Plea Agr. 3. Moore added a handwritten note to this section that states: "The United States and I disagree as to what amount I should be held accountable for *in this range* and will leave that determination to be made by the court after preparation of the pre-sentence report." Id. (emphasis added). Moore, his counsel, and the Assistant U.S. Attorney all initialed this addition. The United States further agreed to accept a payment of $30,000 in lieu of full forfeiture. Id. at 9.

Section 11 of Moore's plea agreement contained a waiver of the right to "contest the conviction or sentence in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to me at the time of my guilty plea." Plea Agr. 5 & 6. In section 12, Moore further agreed to waive his right to collaterally attack, pursuant to 28 U.S.C. § 2255, the judgment and any part of the sentence imposed by the court. Id. at 6. The agreement also acknowledged, as of the date he signed it, March 1, 2005, that he was fully satisfied with the representation and advice his attorney had provided. Plea Agr. 11. In section 23, Moore agreed that he would "make known to the Court no later than at the time of sentencing any dissatisfaction or complaint" he had with his attorney's representation and waived any ineffective assistance claim known if not raised at the time of sentencing. Id.

During the guilty plea hearing, the court confirmed that Moore had discussed the sentencing guidelines with his attorney. Guilty Plea Hr'g Tr. 7. The court also confirmed that Moore understood that he would still be bound by his plea agreement even if the sentence was more severe than he expected. Id. at 8. Moore's counsel reiterated that the United States and Moore disagreed as to the

2

amount between 500 grams and 5 kilograms that Moore would be held responsible for, but that the determination would be left up to the court after the preparation of the presentence report. Id. Counsel further stated that "there are other provisions in the plea agreement with respect to the waivers of appeal under certain circumstances and waivers to collaterally attack the judgment in certain circumstances." Id. at 10. The court then asked Moore, "[d]id you read and sign it . . .?," to which Moore answered, "[y]es, sir, I did." Id. at 12. The court continued, "[a]nd did you understand it? And have they said anything different about the agreement than what you understood it to be?" Moore answered, "[n]o, sir." Id. at 12, 13. Finally, the court asked Moore whether he was "fully satisfied with the counsel, representation and advice given" by his attorney in this matter. Id. at 5. Moore answered in the affirmative. Id. The court determined that Moore was "fully competent and capable of entering an informed plea, and [that] his plea [was] a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of the offense." Id. at 17.

At the July 5, 2005 sentencing hearing, the court asked Moore, "have you and your attorney reviewed the presentence report, including any revisions made after the initial disclosure?" Sentencing Hr'g Tr. 2. Moore's counsel, Anthony Anderson, replied, ". . . we have, Your Honor."[1] Id. Anderson also noted that he had previously filed objections to the presentence report but stated that they were "not in dispute any longer" and that "we're prepared to withdraw those objections." Id. Before Moore was sentenced, he was given an opportunity to address the court. Moore did not express any concern about the presentence report or his attorney's representation but merely stated, "I would just like to say I'm sorry for my part in this situation; tell my family I'm sorry to them, too." Id. at 6. The court ultimately

---

[1] Moore suggests that he did not have the opportunity to affirm or deny that he had reviewed the presentence report and that his counsel's affirmation was not sufficient as to that matter. Pet'r Resp. Resp't Dismiss 3. Moore fails to show that he was unable to communicate with court, however, as he had numerous opportunities to bring his alleged concerns to the attention of the court. See Sentencing Hr'g Tr. 6.

3

sentenced Moore to 168 months incarceration. In addition, the court sentenced Moore to five (5) years supervised release.

Moore collaterally attacks his sentence on four grounds: (1) that his sentence violated Fed. R. Crim. P. 32(e)(2) and U.S. Sentencing Guidelines Manual § 6A1.2 (2004), because the U.S. Probation Officer "failed to disclose the presentence report" personally to Moore, thus denying Moore the "right to contest any material information contained in, or omitted from the report"; (2) that counsel failed to provide him with a copy of the presentence report and that counsel did not discuss the report with him prior to sentencing, thus "denying him the right to dispute [the] information altogether"; (3) that counsel was "negligent" in his "failure to investigate, challenged, or subject the government's case to any meaningful adversarial testing during the sentencing phase"; and (4) that counsel was ineffective in his "failure to reasonably and adequately prepare by investigating the accuracy or sufficiency of information contained in the presentence report and to litigate the objections at sentencing." Pet'r Mem. Supp. Vacate, Set Aside, Correct 4. Moore specifically suggests that counsel was ineffective in his failure to litigate the "objection to the determination of drug quantity attributed to the petitioner" and the "objection to the four point aggravating role adjustment" in paragraphs 16, 28, and 31 of the presentence report. Id. The United States argues that Moore's entire § 2255 motion should be summarily dismissed because he knowingly and voluntarily waived a collateral challenge under § 2255 of his conviction and sentence.[2]

---

[2] The court in Bousley v. United States, 523 U.S. 614 (1998), held that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent. Id. at 622. Not only did Moore fail to raise his first claim on direct review, but he also fails to demonstrate any of the Bousley requirements. However, as the United States inexplicably fails to raise this affirmative defense, the court will only consider the waiver defense. This standard does not apply to ineffective assistance of counsel claims. See Massaro v. United States, 538 U.S. 500 (2003).

4

## II. STANDARD OF REVIEW

In order to move the court to vacate, set aside or correct sentence under § 2255, a petitioner must prove that one of the following occurred: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. In this case, Moore predicates his claims on the first ground, claiming that his sentence was imposed in violation of the Constitution or laws of the United States. Moore bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998); Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

## III. ANALYSIS

In his plea agreement, Moore waived his right to collaterally attack his sentence pursuant to a § 2255 motion. Thus, before the court may consider the grounds under which Moore attacks his sentence, the court must determine whether this waiver precludes review of any or all of Moore's claims. The court in United State v. Wiggins, 905 F.2d 51, 53 (4th Cir. 1990), held that a defendant can waive his right to appeal under appropriate circumstances. The Wiggins court determined that appeal waivers "preserve[ ] the finality of judgments and sentences imposed pursuant to valid pleas of guilty," they "should be given their proper effect," and a defendant who waives his right to appeal for the purpose of obtaining concessions from the government "may not . . . ignore his part of the bargain." Id. at 54. In United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005), the Fourth Circuit Court of Appeals recently extended the general rule concerning appeal waivers and held that, in a plea agreement, a defendant may also waive his right under 28 U.S.C. § 2255 to collaterally attack his conviction and sentence. See also United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005).

5

Waivers of collateral review are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. See Blick, 408 F.3d at 168, 171; United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). The validity of a waiver "depends on whether the defendant knowingly and intelligently agreed to waive the right." Attar, 38 F.3d at 731-32. Although this determination is often made based on the "adequacy of the plea colloquy-specifically, whether the district court questioned the defendant about the [ ] waiver-the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" Blick, 408 F.3d at 169 (quoting United States v. General, 278 F.3d 389, 399, 401 (4th Cir. 2002). Thus, the determination "'must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" Id. (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). A defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid. See United States v. Brown, 232 F.3d 399, 405-06 (4th Cir. 2000). That does not end the inquiry, however. The court must also consider the scope of the plea agreement: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 claim.

Here, the record fully establishes that Moore knowingly and intelligently waived his right to collaterally attack his sentence, including any proceeding brought under § 2255. In his plea agreement, Moore specifically agreed to waive his "right to collaterally attack, pursuant to 28 U.S.C. § 2255, the

6

judgment and any part of the sentence imposed . . . by the court."³ The language and meaning of the § 2255 waiver is clear and unmistakable, and both Moore and his attorney represented by their signatures to the plea agreement that Moore had been fully advised of, and understood, its terms. Moreover, pursuant to Fed. R. Crim. P. 11, before accepting the guilty plea, the court engaged in a lengthy colloquy with Moore. During the plea colloquy, the court specifically questioned Moore about his understanding of the plea agreement. The court determined that Moore was a high school graduate and that he was not under the influence of any type of drug, medication, or alcohol. The court asked Moore whether he had read and signed the plea agreement to which Moore gave an affirmative answer. The court specifically confirmed that Moore understood the agreement. The transcript reveals that Moore's own counsel referenced the waiver of Moore's right to collaterally attack his sentence. Moore affirmed that he was fully satisfied with the counsel, representation, and advice given by his attorney up to that point. The court found on the record, after conducting the plea colloquy, that Moore's plea was knowing and voluntary.

Moore's argument that his collateral attack waiver was not valid because the court failed to specifically address this issue at the Rule 11 hearing lacks merit as this one point is not determinative. Moore points to United States v. Marin, 961 F.2d 493 (4th Cir. 1992), to support his contention. The

---

³ As support for his claim that he did not waive his right to challenge his sentence, Moore points to the waiver under section 11 of the plea agreement in which he agreed to waive the right to contest the conviction or sentence in any post-conviction proceeding, including any proceeding under 28 U.S.C. § 2255, "excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct *not known to me at the time of my guilty plea.*" Plea Agr. 5 & 6 (emphasis added). Moore claims that the waiver was limited to facts known to him at the time of his guilty plea and that his complaint stems from counsel's deficient performance made *after* his guilty plea. Moore seems to ignore the fact, however, that in the very next section he also accepts a broader waiver that is not limited to "ineffective assistance of counsel or prosecutorial misconduct claims" not known to him at the time of his guilty plea. Id. at 6. Moore also specifically waives any ineffective assistance of counsel claims "known and not raised by [him] at the time of sentencing" in section 23 of the plea agreement. Id. at 11. Moore admits that all of "the claims stem from counsel's deficient performance during the sentencing phase of the proceedings" and does not suggest that the claims were not known to him before sentencing. Pet'r Resp. 7.

7

Marin court held that a waiver is "not knowingly and voluntarily made if the district court fails to specifically question the defendant concerning the waiver provisions of the plea agreement during the Rule 11 colloquy *and* the record indicates that the *defendant did not otherwise understand the full significance of the waiver*." Marin, 961 F.2d at 496 (emphasis added). This court finds that the defendant did fully understand the terms of the entire plea agreement and, therefore, the full significance of the waiver. There is no indication in the record that Moore did not understand the plea agreement or its contents. Moore questions whether the record reflects that he understood the significance of the waiver and claims that his attorney never told him that the agreement would "not allow [him] to file an appeal for misconduct by him . . . or for errors that he might make during the sentencing proceedings." Pet'r Aff. 2. However, Moore does not suggest in his instant claim that he did not understand the waiver or its significance. He merely claims that his attorney "read [the plea agreement] over real fast," but this is in direct contradiction to his affirmation during his guilty plea hearing that he had "ample time to consult" with his counsel and his estimation that he took half an hour to go over the agreement. Id.; Pet'r Resp. 13. Moore even makes reference to his counsel's "statement regarding waivers." Id. at 10; see Attar, 38 F.3d at 732 (finding waiver knowing and intelligent even though the district court did not explicitly ask Attar if he understood the significance of the waiver provision, it specifically drew that provision to his attention, and there was no indication in the record that he did not understand its import); Davis, 954 F.2d at 186 (finding waiver of appeal rights contained in plea agreement to be knowing and intelligent, even though trial judge did not explicitly question defendant about his understanding of the waiver provision, where the record established that the defendant was a college graduate, that he had no difficulty with the English language, and that he had discussed the plea agreement extensively with his counsel); cf. United States v. Wessells, 936 F.2d 165, 168 (4th Cir.

8

1991) (finding waiver of appeal rights in plea agreement *not* knowing and intelligent, when transcript of Rule 11 hearing revealed that trial judge had not explicitly questioned defendant about his understanding of the waiver provision, and the record indicated that the defendant did not otherwise understand its significance). It is clear from the record that Moore was advised of and understood that he was waiving just the sort of collateral attack under § 2255 that he raises in this petition.

Despite the determination that Moore knowingly and intelligently waived his right to collaterally attack his sentence, the court must now consider whether any of Moore's claims are outside the scope of that waiver. In the context of direct appeal waivers, the Fourth Circuit has distinguished a narrow class of claims that are considered outside the scope of an enforceable waiver. These limited grounds include claims that the sentence imposed is in excess of the maximum penalty provided by statute, that the sentence is based on a constitutionally impermissible factor such as race, or that the defendant was deprived of the assistance of counsel at the proceeding after the entry of the waiver, such as at sentencing. Attar, 38 F.3d at 732; Marin, 961 F.2d at 496; see also Blick, 408 F.3d at 169. The Fourth Circuit in Lemaster did not squarely address whether these discrete claims would also be considered outside the scope of a § 2255 waiver; however, the court implicitly acknowledged that they would apply equally stating, "we see no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." 403 F.3d at 220 n.2; see also Crews v. United States, No. 2:01CR74, 2006 WL 897219 (E.D. Va. April 5, 2006) (unreported). Accordingly, the court will consider whether any of Moore's grounds for attacking his sentence are within the narrow class of claims that fall outside the scope of an enforceable waiver.

Moore's first claim that the U.S. Probation Officer failed to disclose the presentence report

personally to Moore is certainly not within the class of claims that fall outside the scope of his § 2255 waiver. The record is clear that Moore's counsel filed objections to the presentence report, which issues were resolved to counsel's satisfaction. The remainder of Moore's claims concern ineffective assistance of counsel. Moore suggests that by generally citing ineffective assistance of counsel, he has brought his claims within the purview of Attar, which applies to a claim that a petitioner was deprived of counsel at a proceeding following the entry of a valid waiver. Moore's reliance on Attar is misplaced, however, as that court held that the waiver of the right to appeal did not bar a claim concerning a *complete lack of counsel* during sentencing proceedings. Attar, 38 F.3d at 732-33 (emphasis added). In Attar, the district court permitted the attorneys to withdraw before the sentencing. The Fourth Circuit, in holding that the petitioners' claims were outside the scope of their waivers, determined the petitioners' real dispute was not with their sentence but with the fact that they literally had been deprived of their Sixth Amendment right to counsel. The Fourth Circuit's analysis in Lemaster confirms that Attar is to be narrowly applied. In Lemaster, the petitioner raised several ineffective assistance of counsel claims, including that counsel failed to provide Lemaster with a copy of the presentence report and failed to object to the presentence report as directed by Lemaster. Lemaster, 403 F.3d at 219. That court did not consider the petitioner's claims relating to counsel's representation at sentencing as one of the claims recognized by the Fourth Circuit as outside the scope of the waiver and treated all of his claims as barred by his § 2255 waiver. Id. at 220 n.2. Moore's claims are not analogous to a claim that he was wholly deprived of counsel at sentencing under Attar, so as to bring his claim outside the scope of his valid waiver. Following Lemaster, this court finds that none of Moore's ineffective assistance claims are within

10

the narrow range of claims that are considered outside the scope of his § 2255 waiver.[4]

"Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain." United States v. Ringling, 988 F.2d 504, 506 (4th Cir. 1993). Moore knowingly and intelligently agreed to waive his right to collaterally attack his sentence for several concessions made by the United States, and he was sentenced in the manner to which he agreed. The United States has adhered to its part of the plea bargain. Granting Moore relief on the issues he has raised, under these circumstances, would unfairly deny the United States an important benefit of its bargain. For all of the foregoing reasons, the court holds that Moore's § 2255 waiver is valid and that the issues he has raised in his habeas motion are within the scope of his waiver. Accordingly, Moore's § 2255 petition will not be considered on the merits and the United States' motion to dismiss will be granted.

---

[4] Even if the court were to consider Moore's claims as such, he still fails to bear the burden of establishing that counsel's failure rose to the level of a Sixth Amendment violation under Strickland v. Washington, 466 U.S. 668, 687 (1984). To prevail on an ineffective assistance of counsel claim, a habeas corpus petitioner must satisfy the two-pronged test set forth in Strickland. First, Petitioner must show "that counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, Petitioner must show "that the deficient performance prejudiced the defense" to the extent that he was deprived of a fair trial. Id. The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Upon review of the record, the court finds that Moore would not be able to demonstrate either prong. However, even assuming that Moore can establish deficient performance, he still cannot establish that he was prejudiced as the court finds no indication that the result of the sentencing proceeding would have been different. Even if counsel had provided Moore with a copy of the presentence report well in advance of the sentencing and had challenged the government's case by litigating the objections at sentencing, there is no evidence that the court would have sentenced Moore differently. The presentence report recommended a sentence of 189 months but the court determined that a sentence in the lowest end of the guideline range was appropriate and sentenced Moore to 168 months. Also, the evidence suggests that the drug weight used in the presentence report was "very conservative" and that Moore was responsible for distributing well over 5 kilograms of drugs. The court specifically discussed the drug weight determination with the probation officer at the hearing and was informed that the drug weight did not include the methamphetamine that Moore sold or was caught with but was based only on the methamphetamine delivered to Moore by two other members of the conspiracy. The evidence also supports the presentence report's determination that Moore was the leader of the conspiracy. Interviews conducted by the case agents support the determination that Moore held a supervisory position over several other members of the conspiracy.

11

## IV. CONCLUSION

For the reasons stated herein, the court grants respondent's motion to dismiss. Petitioner's request to vacate and remand this case for re-sentencing or, in the alternative, for an evidentiary hearing, is denied.

ENTER: This 14th day of March, 2007.

*/s/ Norman K. Moon*
Hon. Norman K. Moon
United States District Judge

12

Case 7:06-cv-00410-NKM-mfu   Document 16   Filed 03/19/07   Page 12 of 12   Pageid#: 177